**CHEMICAL MANUFACTURERS ASSOCIATION, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION and United States of America, Respondents,**

**The Fertilizer Institute, Intervenor for Petitioner.**

No. 95–1582.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 17, 1996.

Decided Jan. 31, 1997.

---

Paul M. Donovan, Washington, DC, argued the cause for petitioner, with whom David F. Zoll and Thomas E. Schick were on the briefs.

Peter J. Plocki, Senior Trial Attorney, U.S. Department of Transportation, Washington, DC, argued the cause for respondents, with whom Nancy E. McFadden, General Counsel, Paul M. Geier, Assistant General Counsel, and Dale C. Andrews, Deputy Assistant General Counsel, Washington, DC, were on the brief.

Richard A. Flye and Chris S. Leason, Washington, DC, were on the brief for intervenor The Fertilizer Institute.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The Chemical Manufacturers Association ("CMA") and The Fertilizer Institute ("TFI") petition for review of a Department of Transportation regulation that establishes a rebuttable presumption, applicable in civil administrative enforcement proceedings, that loose closures on railroad tank cars transporting hazardous materials result from the shipper's failure to conduct a proper inspection. Both CMA and TFI contend that the presumption is invalid because there is no reasonable connection between the facts giving rise to the presumption and the fact presumed. In addition, CMA contends that the presumption is contrary to the Carmack Amendment, 49 U.S.C. § 11706, and Federal Rule of Evi-

dence 301, and TFI contends that the regulation violates the Due Process Clause because it limits the type of evidence that the agency may consider to rebut the presumption.

We hold that the Department acted within the scope of its discretion in establishing the presumption. In addition, accepting the Department's representation that the regulation does not limit the type of evidence that a shipper may use to rebut the presumption, the regulation does not violate the Due Process Clause. Because petitioners' other contentions lack merit, we deny the petition.

## I.

Under the Hazardous Materials Transportation Act, 49 U.S.C. §§ 5101–5127, the Secretary of Transportation is required to "prescribe regulations for the safe transportation of hazardous materials in intrastate, interstate, and foreign commerce." Id. § 5103(b). Any person who knowingly violates such regulations is subject to civil penalties of $250 to $25,000 for each violation. Id. § 5123(a). In addition, any person who willfully violates such regulations is subject to criminal penalties. Id. § 5124.

Acting through the Research and Special Programs Administration ("RSPA") and the Federal Railroad Administration ("FRA"), the Department revised its regulations relating to transport of hazardous materials by rail in 1995 and 1996. The regulation at issue relates to the transportation of hazardous chemicals in railroad tank cars. To prevent the release of such chemicals to the environment, the Department has long required shippers to inspect their cars before offering them for shipping. The prior version of the regulation, 49 C.F.R. § 173.31(b) (1994), required shippers to "determine to the extent practicable that the tank, safety appurtenances, and fittings, are in proper condition for the safe transportation of the lading," and to secure all "closures of openings in tank cars and of their protective housings" with a wrench or similar tool. A separate regulation, unchanged by the revision, provided that "[c]losures on packagings shall be so designed and closed that under conditions ... normally incident to transpor-

tation ... the closure is secure and leak-proof." 49 C.F.R. § 173.24(f) (1995).

In 1993 the Department determined that some clarification of these rules was necessary. To that end, it proposed, and ultimately adopted, a revision of § 173.31 explicitly placing on the shipper the responsibility to conduct an external visual inspection before offering a car for transportation of hazardous materials. As part of that inspection, a shipper must check all the closures on the car, and ensure that they are "tool-tight," i.e., properly tightened with an appropriate tool. 49 C.F.R. § 173.31(d)(1)(iv). In addition, the Department also proposed a rebuttable presumption. As initially adopted in 1995, the challenged portion of the regulation provided that:

> Closures on tank cars are required ... to be designed and closed so that under conditions normally incident to transportation, including the effects of temperature and vibration, there will be no identifiable release of a hazardous material to the environment. In any action brought to enforce this section, the lack of securement of any closure to a tool-tight condition, detected at any point, will establish a rebuttable presumption that a proper inspection was not performed by the offeror of the car. That presumption may be rebutted only by evidence establishing that the car was subjected to abnormal treatment, e.g., a derailment or vandalism.

49 C.F.R. § 173.31(d)(2) (1995). The Department justified the presumption by noting that FRA inspectors had discovered loose closures on tank cars containing hazardous materials more than 23,000 times between 1989 and 1995, and that RSPA received about 1,100 to 1,200 reports each year on releases of hazardous materials from tank cars, often as a result of loose closures. During that period, such releases injured 85 railroad workers. 60 Fed.Reg. 49064 (1995). Because its experience showed that "properly designed and secured closures ... do not become loose during transportation," the Department concluded that "most of the incidents reported to RSPA reflect poor pre-trip preparation of the tank car prior to offering it for transportation." Id.

CMA initially filed this petition to challenge the version of the regulation quoted above. TFI moved to intervene on CMA's side, and the court granted the motion. Subsequently, however, the Department revised the regulation to modify the last sentence, which now reads as follows:

That presumption may be rebutted by any evidence indicating that the lack of securement resulted from a specific cause not within the control of the offeror.

61 Fed.Reg. 33255 (1996) (to be codified at 49 C.F.R. § 173.31(d)(2)). In the preamble accompanying the revisions, the Department explained that the presumption "is not intended to shift to [shippers] the burden of proof in the sense of the risk of nonpersuasion, which remains with FRA." 61 Fed. Reg. 33252 (1996). Rather, the presumption simply imposes on a shipper the burden of producing some rebuttal evidence. *Id.* In addition, the preamble stated that the revised rule was intended to "remov[e] any suggestion that the rule limits the type of evidence that respondents may offer and that the fact finder may consider in a rebuttal case." *Id.*

Because CMA and TFI continued to object to the new language, the court ordered the parties to submit briefs on the validity of the revised rule.[1]

## II.

Petitioners contend that the regulation is invalid for essentially two reasons. First, they maintain that the Department lacked the authority to establish the presumption because it has not demonstrated any reasonable connection between the facts giving rise to the presumption and the fact presumed. Second, they maintain that the regulation is invalid because it improperly limits the type of evidence that can be used to rebut the presumption.

## A.

It is well settled that an administrative agency may establish evidentiary presumptions. But unlike a legislative body, which is free to adopt presumptions for policy rea-

sons, *see United Scenic Artists, Local 829 v. NLRB,* 762 F.2d 1027, 1034 (D.C.Cir.1985), an agency may only establish a presumption if there is a sound and rational connection between the proved and inferred facts. *NLRB v. Baptist Hosp., Inc.,* 442 U.S. 773, 787, 99 S.Ct. 2598, 2606, 61 L.Ed.2d 251 (1979); *United Scenic Artists,* 762 F.2d at 1034; *Atchison, Topeka & Santa Fe Ry. Co. v. ICC,* 580 F.2d 623, 629 (D.C.Cir.1978). The requirement of a rational connection derives from the Supreme Court's decision in *Mobile, Jackson & Kansas City Railway Co. v. Turnipseed,* 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910):

That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So also, it must not, under guise or regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

*Id.* at 43, 31 S.Ct. at 138. More recently, the Court has indicated that a court has a duty to review agency presumptions for consistency with their governing statutes, and for rationality. *Baptist Hosp.,* 442 U.S. at 787, 99 S.Ct. at 2606 (citing *Beth Israel Hosp. v. NLRB,* 437 U.S. 483, 501, 98 S.Ct. 2463, 2473–74, 57 L.Ed.2d 370 (1978)). A presumption is normally appropriate when "proof of one fact renders the existence of another fact 'so probable that it is sensible and timesaving to assume the truth of [the inferred] fact ... until the adversary disproves it.' " *NLRB v. Curtin Matheson Scientific, Inc.,* 494 U.S. 775, 788–89, 110 S.Ct. 1542, 1550, 108 L.Ed.2d 801 (1990) (quoting E. CLEARY, MCCORMICK ON EVIDENCE § 343, at 969 (3d ed.1984)) (alterations in original).

---

1. Order of July 23, 1996.

■ Both CMA and TFI contend that the Department's presumption is invalid because there is no rational connection between the fact of a loose closure and a failure to inspect the closure to ensure that it is tight. They maintain that a loose closure could result from any one of a number of causes, including mishandling of a tank car by a railroad. CMA offers a hypothetical example, in which a tank car is transported by different railroads over thousands of miles during a period of several days. Under such circumstances, CMA contends, it would be irrational for the Department to presume that a loose closure is the result of an improper inspection, rather than an intervening cause. This contention might be plausible, but for the Department's requirement that the closures be designed so that, once properly tightened, they will not loosen as a result of vibrations or other conditions normally incident to rail transportation. 49 C.F.R. § 173.24(f) (1995). In view of the Department's conclusion that properly designed closures do not become loose during normal transport, 60 Fed.Reg. 49064, the fact of a loose closure can be explained in only two ways: either the closure was never tightened properly prior to transport, or some intervening event caused it to become loose. Absent evidence of some intervening event, therefore, the Department could reasonably presume that a loose closure is the result of a failure to inspect it properly.

TFI maintains, however, that the Department was not entitled to adopt the presumption without making specific findings in the administrative record to support the conclusion that the "presumed fact is so probable to flow from the proven fact as to support the inference drawn to the exclusion of other probable facts." In its view, the Department would not even meet its burden were it to demonstrate that more often than not, loose closures result from improper inspections. In the past, however, the court has not required an agency to make an evidentiary showing to support its rule. Rather, the court has treated challenges to administrative presumptions in the same manner as other equal protection challenges that do not involve suspect classes, requiring only that the agency articulate a rational basis for its rule. For example, in *United Scenic Artists,* the court invalidated a presumption that a union intended an unlawful secondary boycott of a neutral employer if it was not denied access to information or misled about the employer's neutral status. 762 F.2d at 1035. Rather than inquiring as to whether the agency had established support for the presumption in the record, the court analyzed the presumption as a matter of logic, holding that "the conclusion ... simply does not follow from the premise...." *Id.* Similarly, in *Atchison, Topeka & Santa Fe,* the court held valid an Interstate Commerce Commission ("ICC") rule establishing a rebuttable presumption of market dominance by a carrier in several circumstances. 580 F.2d at 628. In that case, the court did not require a detailed record showing to support the presumption. Although the court did invalidate one of the ICC's presumptions, it did so because the agency had not "adequately articulated its reasons" for settling on a particular figure that would trigger the presumption, noting that "[s]uch articulation is a necessary predicate for conscientious judicial review." *Id.* at 634. The court indicated that the presumption might be valid if the ICC explained its reasoning. *Id.* at 636.

■ This approach is appropriate where, as here, the Department's presumption only purports to shift the burden of producing evidence, and not the ultimate burden of proof in the sense of the risk of nonpersuasion. *Cf.* Fed.R.Evid. 301. As framed by the Department, the rule eliminates the need to call an expert witness in each enforcement proceeding to establish that properly tightened closures generally do not loosen of their own accord in normal transportation, and that loose closures often reflect inadequate pre-trip inspections. Once the shipper introduces rebuttal evidence, a factfinder can assign such evidence whatever weight it deems appropriate. Under the circumstances the Department was not required to consider the relative likelihood of every possible intervening event that might cause a closure to loosen before adopting a presumption. Instead, the court defers to the Department's reasoned judgment that the presumption is a sensible, timesaving device. *See Curtin*

*Matheson,* 494 U.S. at 788–89, 110 S.Ct. at 1550–51; *Atchison, Topeka & Santa Fe,* 580 F.2d at 631. Because the Department has adequately articulated a reasonable evidentiary basis for the presumption in the preamble to the final rule, it follows that the presumption is valid.

None of the cases cited by the petitioners compel a contrary conclusion. TFI relies primarily on *Holland Livestock Ranch v. United States,* 714 F.2d 90 (9th Cir.1983), in which the court declared invalid a presumption by the Bureau of Land Management that cattle with unrestricted access to public lands had in fact trespassed on them. The court held that, although this presumption could be used to measure damages once a trespass had occurred, it could not be used to establish the fact of a trespass. *Id.* at 92. It reasoned that "[p]resumptions should not be used to replace proof needlessly," and that it would not be difficult for the Bureau to prove an actual trespass by at least one animal. *Id.* By contrast, the presumption in the instant case serves a useful administrative purpose, and only arises once the Department has proven a fact strongly suggestive of a violation: the existence of a loose closure.[2]

■ Of course, an otherwise rational presumption is not valid if it is inconsistent with a federal statute. *Baptist Hosp.,* 442 U.S. at 787, 99 S.Ct. at 2606; *United Scenic Artists,* 762 F.2d at 1034. CMA contends that the Department's presumption is inconsistent with the Carmack Amendment, 49 U.S.C. § 11706, which "codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."[3] *Missouri Pacific R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964) (citations and internal quotation marks omitted). The Carmack Amendment applies in a civil proceeding to recover damages for actual loss or injury to property being transported by a railroad. 49 U.S.C. § 11706. In contrast, the Department's presumption, by its terms, applies only in an administrative action to enforce § 173.31. The mechanism for enforcement is set forth in 49 U.S.C. § 5123, which authorizes the Department to impose a civil penalty for a knowing violation of a hazardous materials regulation after providing notice and an opportunity for a hearing.[4] An administrative enforcement proceeding is not an action to recover damages for loss or injury to property, and hence, the

2. The other cases on which TFI relies are equally unpersuasive. *United States ex rel. Exarchou v. Murff,* 265 F.2d 504 (2d Cir.1959) reversed a district court's dismissal of a petition for a writ of habeas corpus. The Second Circuit found that the district court could not presume that an illegal alien had committed adultery, based solely on his testimony that he lived with another woman and her family while separated from his wife. *Id.* at 506. In *In re Davis,* 176 B.R. 118 (Bankr. W.D.N.Y.1994), the district court held that it was not reasonable to conclude that debtors intended to defraud a bank by writing checks on their credit line, based simply on the fact that they knew that their worsening financial condition might prevent them from repaying the money. *Id.* at 121. In both cases, the connection between the proved and inferred facts was highly attenuated. Here, by contrast, as the preamble indicates, the connection between a loose closure and an improper inspection is reasonably direct.

3. 49 U.S.C. § 11706(a) provides in relevant part that:

> A rail carrier providing transportation or service subject to the jurisdiction of the Board

> ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by:
> **(1)** the receiving rail carrier;
> **(2)** the delivering rail carrier; or
> **(3)** another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.
> Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier.

4. Arguably, a criminal prosecution under 49 U.S.C. § 5124 could also be described as a proceeding to enforce the regulation. But, absent any indication in the record to the contrary, we presume that the Department does not intend its presumption to apply to criminal proceedings.

Carmack Amendment does not apply. We, therefore, conclude that the Department's presumption is neither irrational nor inconsistent with federal law.

### B.

Petitioners also contend that the final sentence of the regulation violates the Due Process Clause of the Fifth Amendment by limiting the type of evidence that a shipper may submit to rebut the presumption.[5] They maintain that, because the rule indicates that the presumption may be rebutted by evidence that a loose closure results from a "specific cause," a shipper could not rebut the presumption with evidence that a proper inspection was performed. The Department responds that the language of the regulation "is only meant as an example of evidence that could be used by a shipper in his rebuttal case, and manifestly [does] not preclude the presentation of any other type of rebuttal evidence."

 The Department's explanation of its regulation is somewhat puzzling. If the final sentence were omitted, a shipper would presumably have been entitled to introduce any relevant evidence to rebut the presumption. Logically, then, the final sentence would appear to serve as a limitation on the types of evidence that a shipper may introduce. Yet it is precisely this interpretation that the Department disclaims, both in the preamble to its revised version of the rule and in its brief. 61 Fed.Reg. 33252 (1996). Nonetheless, the Department's representations that the regulation only provides an example of the types of evidence that a shipper may use in rebuttal, and does not preclude a shipper from introducing evidence of any type including evidence of a proper inspection, is consistent with the indication in the preamble that the Department was attempting to respond to objections to the prior language, and is not an unreasonable interpretation. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 510–12, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994); *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965). So

construed, the regulation does not violate the Supreme Court's holding in *Turnipseed* that a presumption may not "under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact ... presumed." 219 U.S. at 43, 31 S.Ct. at 138.

Accordingly, we deny the petition.

---

5. We treat CMA's contention that the regulation is inconsistent with Fed.R.Evid. 301 as a due process challenge because the Federal Rules of Evidence do not apply to administrative enforcement proceedings. *See* Fed.R.Evid. 101, 1101.